AMZI L. BARBER & another *vs.* CHARLES F. COBURN.

SAME *vs.* N. MARIE SAFFORD & another, administrators.

Suffolk. January 8, 1896. — February 28, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Contract — Consideration — Action.*

If bonds in which a guaranty fund is invested are held in the treasury of the United States under an act of Congress to secure the performance by A. of a contract with the government consisting of certain repairs for a term of years, and are assigned to B. as security for a loan, and afterwards C. furnishes labor in doing the work so guaranteed, and B. offers in writing to " pay to the parties who have made repairs for which said fund is held as security the amount of said repairs," in the event that B. " shall receive from the U. S. the said fund or bonds into which it has been invested," the government officials, who had received notice of C.'s claim, having previously refused to release the bonds until all claims made for work in doing the repairs had been paid, C., by withdrawing his claim and consenting to the delivery of the bonds to B., furnishes a valuable consideration for the promise contained in B.'s offer, which

then becomes a binding contract, subject to the condition that the bonds shall be received, and, upon the subsequent receipt of the bonds by B., his promise becomes absolute, upon which C. may maintain an action.

TWO ACTIONS OF CONTRACT, the first being against the surviving partner of the firm of James O. Safford and Company, and the second against the administrators of the estate of James O. Safford, to recover for work and materials furnished by the plaintiffs to the Grahamite and Trinidad Asphalt Pavement Company of the city of New York in repairing the pavement of Pennsylvania Avenue in the city of Washington. The cases were tried together in the Superior Court, without a jury, before *Hammond*, J., who found for the plaintiffs in each case; and the defendants alleged exceptions. The facts appear in the opinion.

*B. F. Hayes & M. Storey*, for the defendants.

*C. F. Kittredge*, for the plaintiffs.

KNOWLTON, J. The plaintiffs seek to recover the amount of a bill due them for labor and materials furnished to the Grahamite and Trinidad Asphalt Pavement Company in repairing the pavement of Pennsylvania Avenue in the city of Washington. This company had a contract with a board of commissioners constituted under an act of the Congress of the United States, whereby it agreed to pave the avenue, and it gave a bond, with sureties, to keep the pavement in good repair for the term of three years, and left in the treasury of the United States ten per cent of the cost of the work as a guaranty fund and an additional security to keep the pavement in repair, which fund was invested in bonds of the United States, all in accordance with the requirements of the act of Congress. The work for which the plaintiffs claim payment was done in repairing defects in the pavement before the expiration of the three years. Before this work was done by the plaintiffs, the bonds were assigned by the Pavement Company through a third party to the defendants, as security for a loan. After finishing the work, the plaintiffs endeavored to secure payment for it from this fund in the treasury of the United States, and one of the firm testified that he called upon the Treasurer and also upon the Secretary of the Treasury and notified each of them of the claim, and was promised by each that the bonds should not be delivered until they had an opportunity to file their claim. The defendant Coburn testified that

the government had certain claims, and demanded payment of them before it would pay the bonds. The government also required some action by the Pavement Company in addition to the original assignment before it would deliver the bonds to the defendants. Thereupon, at a meeting of officers of the Pavement Company called at the request of the defendants' counsel, the paper was signed on which these actions are brought, as follows ·

"New York, Aug. 12th, 1880.

" Gen'l W. W. Averill, Pres't Grahamite & Trinidad Pavement Company.

"Dear Sir: Our clients, James O. Safford & Co., advise us that out of the fund held by the United States for securing repairs of Penn'a Ave. pavement, which was heretofore assigned to Libby, Bartlett, & Kimball, and to which through them we are entitled, they are willing to pay and will pay to the parties who have made repairs for which said fund is held as security the amount of said repairs, and save the Pavement Company harmless therefor, in the event they, Safford & Co., shall receive from the U. S. the said fund or bonds into which it has been invested.

" Very respectfully, etc., Shellabarger & Wilson.

" We approve this.   James O. Safford & Co."

Mr. Wilson, of the firm of Shellabarger and Wilson, one of the defendants' counsel who drew and signed this paper, testified that the reference to repairs in the paper was to repairs reputed to be made by the plaintiffs; and there was evidence indicating that there were other similar claims for repairs which had been presented to the Treasurer of the United States.

The auditor found, among other things, "that the treasury officials refused to pay the ten per cent reserved as security for the faithful performance of the contract with said Pavement Company until all the claims made for work and labor on said pavement within the three years mentioned in the Act of Congress heretofore referred to had been paid, and that the claim for which this action is brought was recognized by said officials as one of those claims, and said bonds were not given up to said Safford & Co. except with the consent of the plaintiffs, and that said agreement . . . was the consideration for said consent"; and that the agreement above quoted " was understood by all the parties to it to include this claim of the plaintiffs." In connec-

tion with certain requests of the defendants, he also found " that upon the whole evidence the plaintiffs can maintain their action; that the work done by the plaintiffs of repairing the Pennsylvania Avenue pavement, for guaranteeing which defendants' bonds were held as security, and which work was necessary to have been done before defendants' firm could obtain the bonds, and which work the government had a right to do and deduct the expenses from the amount of said bonds, although done at the request of the Pavement Company, was for the defendants' benefit, and although it did not create a lien on the bonds, it, connected with the plaintiffs' withdrawal of their claim from the Treasury Department, was good consideration for the agreement dated August 12, 1880, signed by Shellabarger and Wilson and J. O. Safford & Co., to 'pay the parties who have made repairs for which (repairs) said fund is held as security to the amount of said repairs'; and that the plaintiffs were, among others, the 'parties who have made repairs,' and were the parties, among others, intended and included in said agreement of August 12, 1880, and that, by reason of said agreement, the plaintiffs withdrew the notice of their claims for said repairs which had been given at the Treasury Department, and did their part and rendered valuable service to J. O. Safford & Co. in enabling them to obtain the bonds; that the agreement of August 12, 1880, was an agreement between J. O. Safford & Co. and the plaintiffs, as well as between J. O. Safford & Co. and the Pavement Company; and that the plaintiffs can maintain a suit thereon in their own name."

At the trial, before a justice of the Superior Court, the auditor's report was the only evidence offered, and the judge found from it that " the agreement was made with an intention that the plaintiffs should know of it, and that the plaintiffs were informed of it and acted upon it."

We are of opinion that there was evidence to warrant all of the auditor's findings of fact, as well as the finding of the judge. Indeed, the auditor's findings of fact do not seem to have been attacked in the Superior Court by a request for a ruling or otherwise. *Collins* v. *Wickwire*, 162 Mass. 143.

At the time of making the writing relied upon by the plaintiffs, the defendants desired to obtain the bonds in the treasury of the United States. They could not get them without a with-

drawal of the claims of the plaintiffs and others, and without some further action on the part of the Pavement Company. To get the bonds without difficulty, they were willing to give their promise to pay these claims. It is immaterial whether, at the end of expensive litigation, it might have been decided that their original assignment from the Pavement Company was sufficient to entitle them to the bonds, and that the claims of the plaintiffs and others could not be collected out of the fund without their consent. The bonds were held by the United States, and they could enforce their right to them only in such ways as Congress prescribed. It was a valuable consideration for their promise that the obstacles which prevented a voluntary delivery by the Treasurer were to be removed. The writing which was prepared by their counsel, and indorsed in their own hand with their approval, was in the form of an offer to whom it might concern. It was addressed to the President of the Pavement Company, apparently to be communicated to those whose action might be needed, and who might take advantage of it. It was made conditional upon the receipt of the bonds. It was acted upon by the Pavement Company, who did what was necessary to remove one obstacle in the way of the delivery of the bonds. It was then communicated to the plaintiffs, who acted upon it by informing the United States Treasurer that they were willing to have him deliver the bonds without holding them longer for their claim. The offer was made to be acted upon, and when accepted and acted upon by the Pavement Company a consideration on its side was furnished which made it a binding contract between the Pavement Company and the defendants, subject to the condition that the defendants should receive the bonds. When it was accepted and acted upon by the plaintiffs, by their withdrawal of their informal claim from the Treasurer's office, they furnished a consideration on their part which changed the offer into a binding contract, subject to the condition expressed in it that the bonds should be received. When the bonds were subsequently received by the defendants, their promise to the plaintiffs to pay became absolute.

We are of opinion that the judge of the Superior Court rightly ruled, upon the facts found by the auditor and by himself, that the plaintiffs were entitled to recover.

*Exceptions overruled.*